**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TERRY HUGH MAHON,

Defendant-Appellant.

No. 08-6222
(D.C. No. 5:07-CR-00299-F-2)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **PORFILIO**, and **TYMKOVICH**, Circuit Judges.

---

In this direct criminal appeal, Terry Hugh Mahon challenges the sufficiency

of the evidence to support his convictions following a jury trial for:

(1) conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349; (2) mail

fraud in violation of 18 U.S.C. § 1341; (3) money laundering in violation of

18 U.S.C. § 1957(a); and (4) money laundering in violation of 18 U.S.C.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 1956(a)(1)(B)(i).[1]  Exercising jurisdiction under 28 U.S.C. § 1291, and having

reviewed the issue de novo in the light most favorable to the government, *see*

*United States v. Roach*, __ F.3d __, 2009 WL 2989182, at *8 (10th Cir. Sept. 21,

2009), we conclude that the government presented sufficient evidence at trial to

support Mr. Mahon's convictions.  We therefore affirm.

## I.  BACKGROUND

The parties have done a thorough job in their briefs summarizing the

background facts and trial proceedings pertaining to Mr. Mahon's convictions,

and we repeat them here only as necessary to clarify our holding.  We also note

that, at its core, this is a fairly simple case based on mostly undisputed facts.  As

the government has explained, "[s]imply put, [Mr. Mahon and his coconspirator,

Grover Phillips] ran a scheme in which people paid seventeen percent of the value

of their homes in exchange for a promise to receive the full value of their home

[as a rebate] at the end of five years."  Aplee. Br. at 6.  Thus, for purpose of each

of the counts charged against Mr. Mahon (*i.e.*, conspiracy, mail fraud, and money

laundering), the overarching issue for the jury to decide was whether he acted or

conspired to act with a specific intent to defraud in executing the rebate scheme.

The jury unanimously resolved this issue against Mr. Mahon.

---

[1]     The district court sentenced Mr. Mahon to concurrent prison sentences
totaling thirteen years and entered related restitution and forfeiture orders.
Mr. Mahon is not appealing the sentences or monetary penalties imposed by the
district court.

## II. ANALYSIS

As the government has correctly pointed out, "[a]lthough Mr. Mahon challenges his convictions for conspiracy, mail fraud, and money laundering, his argument as to each count rests entirely on the proposition that [he] did not intend to defraud anyone." *Id.* at 25; *see also* Aplt. Br. at 14 ("If the Defendant lacked the requisite intent to defraud and was therefore not guilty of mail fraud . . ., he cannot be found guilty of money laundering because the money was not unlawfully obtained. If the Defendant was acting in good faith without the intent to defraud he cannot be guilty of conspiracy."). As Mr. Mahon puts it, he was a "dreamer not a schemer." Aplt. Br. at 15. Consequently, because this appeal is limited to the issue of Mr. Mahon's fraudulent intent, we do not need to address the sufficiency of the evidence as it pertained to any other elements in the counts of conviction.

We conclude that the government presented sufficient evidence at trial to prove beyond a reasonable doubt that Mr. Mahon intended to defraud the victims of the rebate scheme. Specifically, we agree with the government that "[t]he evidence at trial demonstrated that Mr. Mahon and Mr. Phillips knew that they were not investing money to generate the required exorbitant returns and that they would never honor the millions of dollars in rebate claims that would ultimately be lodged against them." Aplee. Br. at 15. In light of this evidence, the jury

could therefore infer that "Mr. Mahon agreed with Mr. Phillips to take money fraudulently through their rebate program." *Id.* at 16.

In reaching this conclusion, we adopt the following arguments from the government's well-reasoned brief:

> First, the very nature of Mr. Mahon's rebate program suggests a conspiracy to defraud. Mr. Mahon himself acknowledged that the program required an annual return of fifty-seven percent, compounded annually. When he made this statement in October of 2001, he also admitted that [Amsterdam Fidelity Business Trust] had not yet made any high-yield investments. Mr. Phillips, the manager of the "trading company" on which Mr. Mahon was relying for this fifty-seven percent return, was far from a financial wizard. He was merely an acquaintance who had failed in business with Mr. Mahon in the past and who had never managed a trust. Rather than choosing an investment firm with a track record, Mr. Mahon chose a new, uncapitalized business trust that was operated out of Mr. Phillips's house in Stillwater and had no insurance or bonds. Mr. Mahon was in regular contact with Mr. Phillips about the status of investments and therefore knew throughout the scheme that Amsterdam's investment efforts had been unsatisfactory, to put it mildly. Under these circumstances, the jury was entitled to infer that Mr. Mahon set up Rebates from the outset as a vehicle for committing fraud in conjunction with Mr. Phillips.
>
> Second, the jury heard numerous instances in which Mr. Mahon made false and misleading statements to promote his scheme and prevent his fraud from being detected. . . . In [particular], Mr. Mahon lied during his 2001 deposition about his ability to raid the account that was supposed to be earning fantastic investment returns.
>
> . . . .
>
> Third, Mr. Mahon demonstrated from the beginning to the end of the existence of Rebates that his goal was to walk away with as much money as possible at the expense of victims who expected to receive a return on their investments. Mr. Mahon and Mr. Large

received over $900,000 from Amsterdam's investment funds during the life of the scheme. This fleecing of the investment corpus is flatly inconsistent with a legitimate investment enterprise, especially one that needs to earn over fifty percent in interest every year to meet its obligations.

> . . . .

> Fourth, the jury could take into account the changing and radically expanding nature of Mr. Mahon's obligations during the scheme. At the very least, Mr. Mahon and Mr. Phillips knew that they were running a fraudulent scheme by late 2002, when Amsterdam's investments had failed and the Rebates organization continued to market the rebate coupons and accept money from victims. . . .

> Like Mr. Phillips, Mr. Mahon was aware as early as October of 2001 that Rebates was involved in issuing [rebate] coupons based on the value of real estate. A reasonable jury could easily conclude that once Mr. Mahon and Mr. Phillips began accepting money relating to rebates on real estate, they were operating under an agreement to defraud those who purchased rebate coupons.

*Id.* at 16-19, 21, 23 (citations to the record and footnote omitted).

The judgment of the district court is AFFIRMED. Mr. Mahon's motion to seal the presentence report is GRANTED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge